IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STADFORD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.   11-cv-1088-MJR-SCW |
| | ) | |
| JOHN P. GOLLIHER, | ) | |
| MICHAEL CHEKEVDIA, | ) | |
| JENNIFER WILSON, | ) | |
| CATHY HUTCHISON, | ) | |
| CHARLES ROBERTSON, and | ) | |
| GREGORY W. DEJARNETT, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

REAGAN, Chief Judge:

## I.   Introduction

Before the Court is a motion for partial summary judgment and supporting brief (Docs. 71-72) filed by Michael Chekevdia, Gregory DeJarnett, Cathy Hutchison, Charles Robertson, Jennifer Wilson and John Golliher (collectively, Defendants).   Defendants argue that they are entitled to summary judgment on Plaintiff's claims that they failed to protect him from harm and were deliberately indifferent to his medical needs.   In addition, Defendant DeJarnett argues that he is entitled to summary judgment on the claim that he failed to properly supervise John Golliher.   Plaintiff filed a response (Doc. 73), to which Defendants replied (Doc. 76).   For the reasons stated below, the Court will grant Defendants' motion.

II.   <u>Applicable Legal Standards</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* **743 F.3d 1101, 1105 (7ᵗʰ Cir. 2014),** *citing* **FED. R. CIV. P. 56(a).   *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7ᵗʰ Cir. 2012).**   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7ᵗʰ Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** *Accord Bunn v. Khoury Enterpr., Inc.,* **753 F.3d 676, 681-82 (7ᵗʰ Cir. 2014).**

To defeat a summary judgment motion, the nonmovant must articulate specific facts showing that a genuine fact issue exists for trial.   "A disputed issue is 'genuine' where a reasonable jury could render a verdict for the non-moving party 'if the record at trial were identical to the record compiled in the summary judgment proceeding.'"   *520 South Michigan Ave. Assoc., Ltd., v. Unite Here Local 1,* **-- F.3d --, 2014 WL 3720253, \*9 (7ᵗʰ Cir. July 29, 2014).**   Summary judgment is not appropriate when evidence in the record indicates that "alternative inferences can be drawn." *Anderer v. Jones,* **385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-movant. *Anderson,* **699 F.3d at 994;** *Righi v. SMC Corp.,* **632 F.3d 404, 408 (7ᵗʰ Cir. 2011);** *Delapaz*

*v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).**   The district court may not resolve issues of credibility when deciding a summary judgment motion.   "Those are issues for a jury at trial, not a court on summary judgment."   ***Williams v. City of Chicago,* 733 F.3d 749, 752 (7th Cir. 2013).**

When the party moving for summary judgment also bears the burden of proof at trial, he must show that the record contains proof essential to establishing all of the elements of his claim (or prima facie case).   ***Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence… that would entitle it to a directed verdict if not controverted at trial").   *See also MMG Financial Corp. v. Midwest Amusements Park, LLC,* 630 F.3d 651, 656 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010), *citing Smith on Behalf of Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997).**

By contrast, when the summary judgment movant does *not* bear the burden at trial, he can prevail just by showing an absence of evidence to support <u>any</u> essential element of the nonmovant's case. ***Modrowski v. Pigatto,* 712 F.3d 1166, 1169 (7th Cir. 2013).**   Bearing these standards in mind, the Court reviews the record before it.

### III.   <u>Summary of Key Allegations and Evidence in the Record</u>[1]

Plaintiff filed his complaint December 13, 2011 alleging constitutional violations the prior year at the hands of Defendants, correctional officers at Big Muddy River

---

[1]     The facts are taken from the affidavits, deposition testimony, and other exhibits properly before the Court.

Correctional Center.   The pro se complaint survived threshold review and Defendants were served.   Magistrate Judge Williams granted Plaintiff's motion for appointment or recruitment of counsel in April 2013.   An amended complaint was filed on Plaintiff's behalf by counsel on February 7, 2014 (Doc. 67).

Plaintiff brings suit under 42 U.S.C. 1983 for violation of his rights under the Eighth Amendment to the United States Constitution.   Plaintiff alleges that on December 8, 2010, Defendant Golliher used excessive force against him (Plaintiff), and Defendants Chekevdia, Hutchison, Robertson, and Wilson failed to intervene to protect Plaintiff from Golliher's conduct.   Plaintiff alleges that Defendant DeJarnett failed to properly supervise Defendant Golliher so as to prevent his improper conduct against Plaintiff.   Plaintiff further alleges that all Defendants failed to provide him medical care after he was injured by Defendant Golliher.

On December 8, 2010, Plaintiff – en route to a law library session -- was escorted to the segregation by Defendants Chekevdia and Golliher (Transcript of Plaintiff's Deposition, Doc. 72-3 at pp. 7-8, 16).   While escorting Plaintiff, Defendant Golliher was shaking Plaintiff (*id.* at pp. 7-8).   Golliher was also holding the back of Plaintiff's jumpsuit "like a cat and a kitten" (*id.* at p. 8).   He also was cursing and threatening to beat Plaintiff (*id.*).   Chekevdia did not say anything to Golliher during the walk to the lobby (*id.*).   When the group arrived at the lobby, Golliher – without warning -- shoved Plaintiff into the lobby (*id.* at pp. 8, 12-13, 30-31).   The force of the shove caused Plaintiff to almost fall (*id.*).

Plaintiff testified that Defendants Wilson, Hutchison, and Chekevdia witnessed Golliher shove Plaintiff in the lobby (Doc. 72-3 at pp. 8-9). Plaintiff testified that Defendant Robertson should have been able to see Golliher's conduct in the lobby from Robertson's position in the "bubble" (*id.* at pp. 9 and 14). After arriving at the segregation lobby, Plaintiff had a law library services meeting with Defendant Wilson, which lasted approximately five to six minutes (*id.* at pp. 9, 15-18).

Plaintiff was escorted out of the segregation lobby by Golliher and Chekevdia (*id.* at pp. 9, 18). Chekevdia walked behind Plaintiff and Golliher, who had a hold of Plaintiff's arm (*id.* at p. 18). Again, while escorting Plaintiff, Golliher shook Plaintiff (*id.* at pp. 9, 18-19, 29-30). Golliher then let go of Plaintiff, causing him to fall to the floor and hit his head (*id.*). As a result of his fall, Plaintiff received a cut above his eye (*id.* at pp. 9-10, 18-19, 29-30). The incident was unexpected and lasted a few seconds (*id.* at pp. 30, 12-13, 19-20).

Plaintiff's injury occurred December 8, 2010 at 12:40 p.m. (Doc. 72-1 at ¶¶ 2-3; Doc. 72-2). Licensed Practical Nurse Nancy Puckett examined and treated Plaintiff's injury at 12:45 p.m. (*id.*). Plaintiff admits that he saw a nurse within ten minutes of his injury (Doc. 72-3 at p. 22). He was eventually taken to healthcare and received stitches (*id.* at p. 10).

Plaintiff testified that prior to the incident with Golliher on December 8, 2010, Plaintiff complained to Defendant DeJarnett about Golliher on numerous occasions; although Plaintiff does not recall the exact date (*id.* at pp. 49-50). DeJarnett has no

recollection of any specific complaints from Plaintiff about Golliher.  He heard numerous complaints from inmates regarding staff and noted that Plaintiff complained. Plaintiff testified that he had several prior encounters with Golliher including: a time where Golliher handcuffed him for 20 minutes, an incident where Golliher stuck his finger in his food, an incident where he snatched papers and terminated his law library services, and a number of incidents where Golliher turned Plaintiff's light on in the morning to aggravate him (Doc. 72-3 at pp. 33-37).  Plaintiff testified that he filed grievances on some of these incidents but not all (*Id.* at pp. 24-25).

## IV.    Analysis

### A.    FAILURE TO PROTECT/INTERVENE

Plaintiff alleges that while Defendant Golliher was using excessive force against him, Defendants Chekevdia, Hutchison, Robertson, and Wilson failed to intervene and failed to protect him.  Plaintiff's theory is that as bystanders, Defendants saw that Golliher was using excessive force against Plaintiff and yet they failed to intervene.   For purposes of the summary judgment motion, Defendants assume that Golliher's conduct amounted to excessive force.

To hold the non-Golliher Defendants liable as bystanders for failing to intervene, Plaintiff must show that Defendants "(1) had reason to know that [Golliher] was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring."   *Lewis v. Downey*, **581 F.3d 467, 472 (7th Cir. 2009) (citing** *Chavez v. Ill. State Police*, **251 F.3d 612, 652 (7th Cir.**

2001); *Harper v. Albert*, **400 F.3d 1052, 1064 (7th Cir. 2005)); Montano v. City of Chicago**, **535 F.3d 558, 569 (7th Cir. 2008).**   Whether an officer had sufficient time to intervene "is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possible conclude otherwise."   *Abdullahi v. City of Madison*, **423 F.3d 763, 774 (7th Cir. 2005) (citing L**anigan v. Village of East Hazel Crest, Ill.**, 110 F.3d 467, 478 (7th Cir. 1997)).**

Defendants argue that they did not have a realistic opportunity to intervene in Golliher's excessive force.   Here, the evidence indicates that Defendants Hutchison and Wilson were in the segregation lobby when Golliher and Chekevdia brought Plaintiff in, and Defendant Robertson was in the "bubble," behind a glass wall (Doc. 72-3 at p. 14-15).   Upon entering the lobby, Defendant Golliher shoved Plaintiff without warning and with enough force that he almost fell.   There is no evidence that any of the Defendants were aware that Golliher was going to shove Plaintiff or that they had time to intervene.   Plaintiff testified that it was a single shove, it was brief, and, according to Plaintiff, it occurred completely without warning (Doc. 72-3 at pp. 8, 12-13, 30-31). There is simply no evidence that Defendants had time to respond to the action.   *See* *Lewis v. Downey*, **581 F.3d 467, 472 (7th Cir. 2009) (No realistic opportunity to stop officer from using taser when the time between order and use of taser was so brief that the co-defendant could not even respond.).**

Plaintiff makes much of the fact that Defendant Golliher was shaking Plaintiff from his cell to the lobby and that he cursed at him, but there is no evidence to suggest

that Defendants Hutchison, Wilson, or Robertson saw this continued shaking. Plaintiff only testified that these Defendants saw Golliher shove Plaintiff when he entered the lobby (Doc. 72-3 at p. 9). There is no evidence that these Defendants witnessed Golliher shaking Plaintiff or shoving him on the way back to his cell.

Furthermore, there is no evidence that Defendants knew that Golliher was going to use excessive force on Plaintiff on the way back to his cell. While Plaintiff makes much of the fact that Golliher later shook Plaintiff and again shoved him on the way back to his cell, this was after Plaintiff was in the segregation lobby for law library for several minutes. As Defendants point out, there is no evidence that Golliher continued to use any force against Plaintiff while he was in the lobby, nor is there evidence that Defendants were aware that Golliher was going to continue his conduct when he left the lobby with Plaintiff (Doc. 72-3 at p. 44).

There is also no evidence of continuous use of force as Plaintiff suggests. These were, at most, two isolated acts by Golliher: the shake and shove on the way to the lobby and the shake and shove on the way to Plaintiff's cell. While Plaintiff argues that he was in the lobby for five or six minutes and Defendants should have done something during that time, there is no evidence that Defendants had reason to *know* that Golliher was going to knock/shove Plaintiff down on the way back to his cell. Thus, Defendants Hutchison, Wilson, and Robertson are entitled to summary judgment as to this claim.

The Court also finds that Defendant Chekevdia is entitled to summary judgment on Plaintiff's failure to intervene claim. The evidence indicates that Defendant

Chekevdia accompanied Defendant Golliher when he transferred Plaintiff from his cell to the segregation lobby.   Thus, Chekevdia was present when Golliher was shaking Plaintiff and holding his shirt like a "cat and a kitten" (Doc. 72-3 at p. 8).   However, there is no evidence that Chekevdia had knowledge that Golliher was using excessive force on the way from and to Plaintiff's cell.   "[N]ot every push or shove by a prison guard violates a prisoner's constitutional rights." *See Dewalt v. Carter*, **224 F.3d 607, 620 (7th Cir. 2000) (single, isolated act of shoving a *de minimis* use of force).** Golliher's shaking of Plaintiff, as Plaintiff described, would not amount to excessive force on its own, and there is nothing in the record to suggest that Chekevdia was aware that Golliher was going to do more than just shake Plaintiff.   Further, there is no evidence that Chekevdia had time to intervene when Golliher eventually shoved Plaintiff to the ground.   It was a single act, that was brief and unexpected, and Plaintiff testified that Chekevdia was *behind* both Golliher and Plaintiff as they were walking. Thus, the Court finds that Chekevdia is entitled to summary judgment on Plaintiff's failure to intervene claim.

### B.   FAILURE TO SUPERVISE AS DELIBERATE INDIFFERENCE

Plaintiff alleges that Defendant DeJarnett was aware of Defendant Golliher's abuse and failed to take corrective action to prevent the excessive force.   The Seventh Circuit has summarized what is necessary for an inmate to establish a failure-to-protect claim against a supervisor of another correctional official.   In *Boyce v. Moore,* **314 F.3d 884, 888 (7th Cir. 2002),** the Court explained:

> The Eighth Amendment requires prison officials to "'take reasonable measures to guarantee the safety of the inmates' " and to protect them from harm at the hands of others. *Farmer v. Brennan,* 511 U.S. 825, 832–33 … (1994).... Liability must be predicated on a finding of "'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834 … (quoting *Wilson v. Seiter,* 501 U.S. 294, 302–03 … (1991)); *see Sanville v. McCaughtry,* 266 F.3d 724, 735 (7th Cir. 2001) (finding negligence insufficient to establish deliberate indifference); *Henderson,* 196 F.3d at 844 (requiring "deliberate indifference" for Eighth Amendment violation). Therefore, a prison official may be found liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 ….
>
> Moreover, a supervisor cannot be held liable in a § 1983 action unless the individual was personally involved in the wrongful conduct such that he … caused or participated in the alleged violation. *See Moore v. Indiana,* 999 F.2d 1125, 1129 (7th Cir.1993).

So, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendant acted with deliberate indifference to that danger. ***Farmer v. Brennan*, 511 U.S. 825, 834 (1994).** In the case at bar, to prevail on his claim that Defendant DeJarnett failed to protect him from constitutional deprivation at the hands of Defendant Golliher, Plaintiff has to show that Golliher posed a substantial risk to his safety and that DeJarnett acted with deliberate indifference to that risk.

To satisfy the first, objective prong, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." ***Farmer*, 511 U.S. at 834.** This means that the inmate must show that prior to the incident, there was a substantial risk that harm might occur. ***Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).** The

courts have found that an inmate who is assaulted by other inmates has experienced a substantially serious harm. *Brown*, **398 F.3d at 910.** Plaintiff must also show "actual knowledge of that risk." *Weiss*, **230 F.3d at 1032 (citing** *Henderson v. Sheahan*, **196 F.3d 839, 844-45 & n.2 (7th Cir. 1999);** *Payne for Hicks v. Churchich*, **161 F.3d 1030, 1041 (7th Cir. 1998)).** He must show that the officials were aware of a risk but failed to take the appropriate steps to protect the inmate. *Id.* Actual knowledge can be inferred from circumstantial evidence. *Fischer v. Lovejoy*, **414 F.3d 659, 662 (7th Cir. 2005) (citing** *Farmer*, **511 U.S. at 842).**

And, as a supervisor, Defendant DeJarnett can only be liable for his own actions. The doctrine of *respondeat superior* is not applicable to § 1983 claims. A defendant can only be held liable if he was "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, **266 F.3d 724, 740 (7th Cir. 2001) (quoting** *Chavez v. Ill. State Police*, **251 F.3d 612, 651 (7th Cir. 2001)).** An individual can only be held liable for his or her own personal actions and their own knowledge, and they are not liable for the knowledge or action of those individuals whom they supervise. *See Vinning-El v. Evans*, **657 F.3d 591, 592 (7th Cir. 2011);** *Burks v. Raemisch*, **555 F.3d 592, 594 (7th Cir. 2009).**

"[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police*, **251 F.3d 612, 651 (7th Cir. 2001).** However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of [a] plaintiff's

constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Rascon v. Hardiman*, **803 F.2d 269, 274 (7th Cir. 1986);** *Lanigan v. Village of East Hazel Crest*, **Ill., 110 F.3d 467, 477 (7th Cir. 1997);** *Sanville*, **251 F.3d at 740.** "Supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Backes v. Village of Peoria Heights*, **Ill., 662 F.3d 866, 870 (7th Cir. 2011) (quoting** *Chavez*, **251 F.3d at 651).** A supervisor is liable only for his own misconduct, not for the misconduct of others under his authority. *Duckworth v. Franzen*, **780 F.2d 645, 650 (7th Cir. 1985).**

Plaintiff argues that Defendant DeJarnett failed to protect Plaintiff from Defendant Golliher, because he knew that Golliher had a "pattern of abusive behavior" and took no action to prevent the abuse. In essence, Plaintiff argues that Defendant DeJarnett either approved of Golliher's behavior or turned a blind eye to it. However, there is no evidence that Defendant DeJarnett knew that Golliher would assault Plaintiff. DeJarnett had heard complaints from many inmates, including Plaintiff, but he could not recall any specific complaints made by Plaintiff against Golliher.

Plaintiff testified that he made several complaints to DeJarnett about Golliher, but Plaintiff did not recall when those complaints were made; nor did he testify as to *what* those complaints were about (Doc. 72-3 at p. 50). Plaintiff testified that he had several past encounters with Golliher including a time when Golliher left Plaintiff in handcuffs for twenty minutes. But Plaintiff testified he did not file a grievance as to that incident

(*id*. at p. 33-34).   He did write a grievance when Golliher stuck his finger in Plaintiff's food and when Golliher snatched Plaintiff's papers (*id*. at pp. 34-35).   Plaintiff also stated that Golliher turned Plaintiff's light on in the morning on numerous occasions (*id*. at p 37).   However, it is not clear from the record which of these complaints, if any, Plaintiff made to DeJarnett.

Furthermore, there is no evidence that Plaintiff told DeJarnett that Golliher was using excessive force against Plaintiff or that Golliher had threatened Plaintiff with force. At most, Plaintiff complained to DeJarnett about conduct of Golliher's that, according to Plaintiff's own words, "aggravated" him.   The conduct Plaintiff complained of is a far cry from the physical attack that Plaintiff alleges Golliher made on December 8, 2010. Thus, there is no evidence that DeJarnett had knowledge that Plaintiff was at a substantial risk of serious harm from Defendant Golliher.   Accordingly, the Court finds that Defendant DeJarnett is entitled to summary judgment on Plaintiff's failure to supervise claim.

### C.   DELIBERATE INDIFFERENCE

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."   ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).**   To prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind."   ***Greeno v.***

*Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

Defendants only argue that they are entitled to summary judgment because Plaintiff's small delay in seeing medical staff for his injury did not amount to deliberate indifference. Moving on to the second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).** "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653**. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, **511 U.S. at 842) (citations omitted).** An inmate does not have to prove that his complaints of pain were

"literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle ... because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, **670 F.3d 821-22 (7th Cir. 2012)** **(***Collins v. Seeman*, **462 F.3d 757, 762 (7th Cir. 2006)).**   "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer*, **511 U.S. at 843).**

Here, Defendants argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claim, because there was no delay in medical care to Plaintiff. While a delay in medical treatment can constitute deliberate indifference, *see Grieveson v. Anderson*, **538 F.3d 763, 779-80 (7th Cir. 2008)(failure to obtain medical attention for inmate with broken nose for one and a half days could constitute a delay in treatment and deliberate indifference),** the evidence in this case indicates that Plaintiff did not suffer a delay in medical care.   Plaintiff was injured at 12:40 p.m. on December 8, 2010 and was seen at 12:45 by Nancy Pickett, Licensed Practical Nurse (Doc. 72-2 at pp. 1-2; Doc. 72-1 at ¶¶ 2-3; Doc. 72-3 at p. 22).   Plaintiff concedes that there is insufficient evidence to oppose the summary judgment on this matter as the facts clearly do not

show a delay in medical treatment.   Thus, the Court finds that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim.

**V.**   <u>**Conclusion**</u>

As to Plaintiff's claims that (1) Defendants Chekevdia, Hutchison, Robertson and Wilson failed to intervene to protect Plaintiff from harm, (2) Defendant DeJarnett failed to properly supervise Defendant Golliher, and (3) all Defendants denied Plaintiff medical care following his injury, the are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.   Accordingly, the Court **GRANTS** Defendants' motion for partial summary judgment (Doc. 71).   The Clerk of Court will enter judgment against Plaintiff and in favor of Defendants on these claims at the end of the case.

**One claim remains for trial against a single Defendant – Plaintiff's claim for excessive force against John Golliher (Count I of the amended complaint, Doc. 67).** Jury trial is scheduled to commence October 27, 2014 at 9:00 a.m. (subject to multiple criminal cases set for trial the same day before the undersigned District Judge).

IT IS SO ORDERED.

DATED October 6, 2014.

<u>s/ Michael J. Reagan</u>
Michael J. Reagan
United States District Judge